STATE OF NORTH CAROLINA v. WALTER THOMAS YORK

No. 550A95

(Filed 5 September 1997)

1. **Evidence and Witnesses § 763 (NCI4th)— murder and kidnapping—blood test report—hearsay—second test properly admitted—no prejudice**

There was no plain error in a prosecution for first-degree murder by torture and first-degree kidnapping where the trial court allowed hearsay testimony by an SBI agent regarding blood tests conducted by the SBI lab. Blood tests from the crime scene were analyzed by two SBI serologists, their reports reached identical conclusions, and the testimony about which defendant complains involved only one report. The tests from the other report were properly admitted and their substance was identical to that of the contested report.

**Am Jur 2d, Appellate Review §§ 752-760.**

2. **Evidence and Witnesses § 763 (NCI4th)— murder and kidnapping—DNA—chain of custody—other evidence to same effect**

There was no plain error in a prosecution for first-degree murder by torture and first-degree kidnapping where defendant contended that the trial court allowed DNA testimony without requiring the State to establish a proper chain of custody. Other evidence to the same effect was introduced and the DNA evidence cannot be said to have caused a different result.

**Am Jur 2d, Appellate Review §§ 752-760.**

3. **Evidence and Witnesses § 2851 (NCI4th)— murder and kidnapping—officer allowed to read from notes—recollection refreshed—no error**

The trial court did not err in a prosecution for first-degree murder by torture and first-degree kidnapping by allowing a captain in the sheriff's department to read during his testimony from notes he took of his interview with defendant where the use of the notes was for the purpose of refreshing recollection to facilitate accurate testimony and did not violate the present recollection refreshed rule. The captain first testified from memory and

**STATE v. YORK**

[347 N.C. 79 (1997)]

in detail about the events surrounding the interview with defendant, he reviewed the reading of *Miranda* warnings by reference to the waiver form and read without objection from that form in describing the beginning of the interview, he was then questioned about the specific contents of the conversation and referred to the redraft of his contemporaneous notes, he spoke in the second person throughout his testimony about the interview, his recounting of the interview was interrupted by the prosecutor, whom he answered independently of his notes, and he had extensive independent recall about the events surrounding the interview and the interview itself.

**Am Jur 2d, Witnesses §§ 769-799.**

**Refreshment of recollection by use of memoranda or other writings. 82 ALR2d 473.**

4. **Criminal Law § 475 (NCI4th Rev.)— murder and kidnapping—prosecutor's argument—characterization of evidence**

There was no error requiring the trial court to intervene *ex mero motu* in a prosecution for first-degree murder by torture and first-degree kidnapping where the prosecutor in opening and closing arguments referred to defendant's statements during an interview with an officer as a confession. Although the statements were not introduced as a confession, they were sufficiently self-incriminating to be so characterized in argument and the characterization by the prosecution was not belabored or emphasized. The references were not so grossly improper as to amount to a denial of defendant's right to a fair trial.

**Am Jur 2d, Trial §§ 522, 554.**

5. **Evidence and Witnesses § 2812 (NCI4th)— murder and kidnapping—witness not declared hostile—latitude in questioning allowed—no abuse of discretion**

The trial court did not abuse its discretion in a prosecution for first-degree murder by torture and first-degree kidnapping by denying defendant's request to have one of his witnesses declared hostile where defense counsel sought to ask leading questions in order to establish the witness's motive for lying to investigating officers, the court allowed defense counsel considerable latitude in examining the witness, and defense counsel

STATE v. YORK

[347 N.C. 79 (1997)]

succeeded in eliciting the full substance of the testimony desired by defendant.

**Am Jur 2d, Witnesses §§ 54, 754, 984.**

6. **Evidence and Witnesses § 831 (NCI4th)— first-degree murder by torture and kidnapping—codefendants' statements—original recording introduced—secondary evidence excluded—best evidence rule**

The trial court did not err in a prosecution for first-degree murder by torture and first-degree kidnapping by denying defendant's motion to provide the jury with transcripts of recorded statements given to the police by codefendants where defendant had introduced the tape recordings into evidence. The best evidence rule requires that secondary evidence offered to prove the contents of a recording be excluded whenever the original recording is available.

**Am Jur 2d, Evidence §§ 1049-1052, 1069.**

**Omission or inaudibility of portions of sound recording as affecting its admissibility in evidence. 57 ALR3d 746.**

**Admissibility in evidence of sound recording as affected by hearsay and best evidence rules. 58 ALR3d 598.**

7. **Evidence and Witnesses § 831 (NCI4th)— first-degree murder by torture and kidnapping—transcripts of recorded conversations with officers—excluded**

The trial court did not err in a prosecution for first-degree murder by torture and first-degree kidnapping by preventing defendant *ex mero motu* from using transcripts of codefendants' recorded conversations with police officers. The court intervened without objection from either party when the officer who had interviewed the codefendants referred to the transcripts during his testimony. When defendant asserted that portions of the tape were inaudible, the court refused to reverse the ruling and stated, "Well, they've heard the tapes." Although defendant now contends that the court impermissibly conveyed to the jury the opinion that the interviews were irrelevant, the court's statement was merely a recognition that the jury had already heard the evidence.

**Am Jur 2d, Evidence §§ 1049-1052, 1069.**

STATE v. YORK

[347 N.C. 79 (1997)]

Omission or inaudibility of portions of sound recording as affecting its admissibility in evidence. 57 ALR3d 746.

Admissibility in evidence of sound recording as affected by hearsay and best evidence rules. 58 ALR3d 598.

8. **Criminal Law § 553 (NCI4th Rev.)— first-degree murder by torture and first-degree kidnapping—prosecutor's argument—codefendant's silence—mistrial denied**

The trial court did not err in a prosecution for first-degree murder by torture and first-degree kidnapping by denying defendant's motion for a mistrial and curative instructions after allegedly impermissible comments by the State about a codefendant's failure to testify. The trial court sustained all of defendant's objections to these statements and had issued instructions to the jury at the outset of the trial regarding the consideration to be given evidence to which an objection is raised and sustained. Those instructions were sufficient to cure any prejudicial effect suffered by defendant; assuming that the trial court's rejection of defendant's motion for a precautionary instruction was erroneous, it does not appear that there was a reasonable possibility that the result would have been different but for the error because the codefendant was identified and referred to a number of times throughout the trial and the fact that he was not testifying was readily apparent to the jury. Finally, the references to the codefendant in the State's closing argument were within the wide latitude granted parties during closing argument. The codefendant was repeatedly referred to throughout the case and particularly during defendant's presentation of evidence. The State's reference to him and to the defendant's failure to have him testify was not improper in the context of the case.

Am Jur 2d, Trial §§ 577-587.

9. **Evidence and Witnesses § 221 (NCI4th)— first-degree murder by torture and first-degree kidnapping—testimony by codefendant's cellmate—excluded—irrelevant—confusing**

The trial court did not err in a prosecution for first-degree murder by torture and first-degree kidnapping by sustaining the State's objection to the proposed testimony of a cellmate of a codefendant where the cellmate who was to testify, another cell-

STATE v. YORK

[347 N.C. 79 (1997)]

mate, and the codefendant composed a letter which was intended to result in defendant's taking the entire blame for the murder. The proffered testimony involved alleged purposes for the codefendant's actions while in prison and did not concern defendant's motives for the killing or any actions taken by defendant in relation to proving his guilt or innocence, does not go to prove the existence of any fact that is of consequence in the determination of the charge of murder for which defendant was found guilty, and was collateral and irrelevant. Even so, the reliability of the testimony was questionable and would likely have confused the jury on a collateral matter, and it was properly excluded under N.C.G.S. § 8C-1, Rule 403.

**Am Jur 2d, Evidence §§ 308, 347-350.**

10. **Homicide § 688 (NCI4th)— murder by torture—instructions on accidental death, misadventure, intervening agency refused—unlawful purpose**

The trial court did not err in a prosecution for first-degree murder by torture and first-kidnapping by denying defendant's request for jury instructions on accidental death, death by misadventure, and intervening agency. Any defense based on death by accident or misadventure must be predicated upon the absence of an unlawful purpose on defendant's part; in this case, abundant evidence shows that defendant and other individuals intended to punish the victim through cruel and torturous treatment over the course of numerous days, including binding him and confining him in a closet, and that the cumulative effect of the torturous treatment was the death of the victim. There was no basis for defendant's requested instructions.

**Am Jur 2d, Homicide § 514; Trial §§ 1427-1433.**

11. **Criminal Law § 805 (NCI4th Rev.)— murder by torture—acting in concert—instructions—no error**

The trial court did not erroneously instruct the jury on acting in concert in a prosecution for first-degree murder by torture where defendant contended that there was insufficient evidence to prove that each of the codefendants shared a common plan or scheme to intentionally inflict torture on the victim and that the instruction lessened the State's burden of proof. The common thread running throughout the case was the desire of defendant and the other residents of the trailer to inflict punishment on the

victim, which was accomplished by repeated acts of brutality and torture. Premeditation and deliberation is not an element of first-degree murder by torture or felony murder, and intent to kill is not an essential element of first-degree murder either by torture or under the felony murder rule. The State was not required to prove that defendant possessed a particular *mens rea*, all of the elements for acting in concert were met, and the trial court did not err in its jury instructions.

**Am Jur 2d, Trial §§ 1077 et seq.**

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment entered by Hyatt, J., at the 10 July 1995 Criminal Session of Superior Court, Jackson County, upon jury verdicts finding defendant guilty of first-degree kidnapping and guilty of first-degree murder by torture and under the felony murder rule. Heard in the Supreme Court 17 March 1997.

*Michael F. Easley, Attorney General, by James P. Erwin, Jr., Special Deputy Attorney General, for the State.*

*Margaret Creasy Ciardella for defendant-appellant.*

LAKE, Justice.

On 2 May 1994, defendant was indicted for first-degree murder and first-degree kidnapping. He was tried capitally to a jury at the 10 July 1995 Criminal Session of Superior Court, Jackson County, Judge J. Marlene Hyatt presiding. The jury found defendant guilty of first-degree kidnapping and guilty of first-degree murder by torture and under the felony murder rule. After a capital sentencing proceeding, the jury recommended a sentence of life imprisonment for the first-degree murder conviction. On 25 July 1995, Judge Hyatt sentenced defendant to a term of life imprisonment for the first-degree murder conviction and to a twelve-year consecutive term of imprisonment for the kidnapping conviction. On the same day, Judge Hyatt arrested judgment on the kidnapping conviction. Defendant appeals to this Court as of right from the first-degree murder conviction.

The State presented evidence tending to show that the defendant, Walter Thomas York, met one of the codefendants, Vickie Fox, when he was fourteen years old and in the eighth grade. Fox was twenty-six years old at the time. Defendant initially went to Fox's trailer,

**STATE v. YORK**

[347 N.C. 79 (1997)]

located in the Wike's Trailer Park, to party, drink beer and smoke marijuana. He became sexually involved with Fox and moved in with her soon thereafter. Defendant quit school and began looking for work to help pay the bills. Defendant was illiterate, and Fox took care of any paperwork he needed, such as filling out job applications. Although still married to her husband, Kenneth Fox, who lived in the trailer intermittently, Vickie Fox was sexually involved with several other young men in addition to defendant. She had a reputation for providing alcohol and other things to male college students.

At the time of the events giving rise to this case, as many as thirteen people were living in Fox's three-bedroom, single-wide trailer. Among the residents was the twenty-four-year-old victim, Tony Queen. Fox met Queen and became sexually involved with him in late 1992. He moved into the trailer after defendant began living there.

On or about 17 March 1994, Vickie Fox's five-year-old daughter, Kendra, told codefendant Michelle Vinson that the victim, Tony Queen, had "messed" with her. When questioned by the defendant, Queen admitted that he had molested Kendra and that he had placed a bottle of soapy water in Vickie's son's crib. The defendant became enraged and hit Queen. That evening, several other residents beat the victim, forced him to drink soapy water and made him sleep in the hall. Over approximately the next two weeks, the residents of the trailer and sundry other acquaintances systematically tortured the victim as punishment for his actions. Although the testimony at trial was conflicting as to who performed the various acts, the torture included: repeated beating and kicking of the victim, shaving his head, scraping the word "faggot" on his arm, attempting to burn a tattoo containing Vickie's name off his arm with a soldering iron, hitting his penis with a billy stick, cutting his throat with a knife, burning his genitals and legs with a torch made from an aerosol can, and forcing him to ingest his own urine. Defendant had a primary role in either the direction or carrying out of the majority of these actions. The victim was restrained in the trailer by a dog collar when the residents were not present, although witnesses testified that Queen was told he could leave the trailer if he so desired.

During the course of this systematic treatment, the residents decided that they needed to stop beating Queen for a while so that his face could heal and he could cash his unemployment check for them. However, after a short while, the residents realized that Queen's face

was too injured to heal quickly, so they forged his name and cashed the check themselves. On the night of Queen's death, the residents decided to use the money from Queen's check to go out to eat at Pizza Hut. They placed a dog collar on Queen, taped his feet, gagged his mouth with a cloth and tape, and locked him in a bedroom closet by placing a screwdriver in the door and then nailing the door shut. When they returned, Tony Queen was dead. Several of the residents placed Queen's body in the trunk of Kenneth Fox's car and drove to Toccoa, Georgia, where they dumped his body in the woods. One of the codefendants, Robert Trantham, led authorities to the body.

An autopsy indicated that the victim died as a result of gagging and positional asphyxia. The autopsy revealed that the position in which the victim was placed caused interference with the mechanics of breathing. Pneumonia present in the victim's left lung was also a likely contributor to the victim's death.

[1] In his first assignment of error, defendant contends that the trial court committed plain error by allowing the hearsay testimony of State Bureau of Investigation (SBI) Agent Kevin West regarding blood tests conducted by a serologist at the SBI lab. At trial, Agent West testified that blood tests conducted by serologist Brenda Vissitte showed the presence of the victim's blood in various rooms of the trailer. The purpose of the testimony was to bolster the State's theory that the victim was tortured by establishing, through scientific evidence, that the victim was tortured throughout the trailer. Defendant asserts that the evidence was inadmissible hearsay and improper lay-opinion testimony because the State failed to establish Agent West's competency to analyze and report on the test results in the manner allowed at trial. As a result, defendant argues that the evidence was so prejudicial that he is entitled to a new trial.

We note at the outset that the State concedes the testimony in question was hearsay. However, defendant did not object at trial to the introduction of this evidence. The trial court's admission of this evidence is thus reviewable by this Court only under the plain error rule. *State v. Ocasio*, 344 N.C. 568, 577, 476 S.E.2d 281, 286 (1996); *State v. Sierra*, 335 N.C. 753, 761, 440 S.E.2d 791, 796 (1994); *State v. Black*, 308 N.C. 736, 741, 303 S.E.2d 804, 806 (1983). Plain error is error which was " 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993) (quoting *State v. Bagley*, 321

N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)). Defendant has failed to establish such error. Blood tests from the crime scene were analyzed by two SBI serologists, Brenda Vissitte and Mark Boodee. The reports reached identical conclusions regarding the critical question of whose blood was present in the trailer. The testimony by Agent West, about which defendant complains, involved only the results of the Vissitte report. Because the blood tests from the Boodee report were properly admitted and because their substance was identical to that of the Vissitte report about which Agent West testified, no plain error can be shown. This assignment of error is overruled.

[2] In his next assignment of error, defendant asserts that the trial court committed plain error by allowing DNA testimony from SBI serologist Mark Boodee without requiring the State to establish a proper chain of custody for the items on which the analysis was conducted. Defendant argues that, because circumstances indicate something happened during handling to skew the DNA analysis and because the testimony was so prejudicial to defendant, defendant is entitled to a new trial.

A review of the record reveals that defendant failed to object at trial to the authenticity of the disputed evidence. Assignments of error based on improper authentication of exhibits introduced at trial will not be heard unless objection was made in a timely manner at trial. *State v. Terry*, 329 N.C. 191, 196, 404 S.E.2d 658, 661 (1991). Furthermore, the trial court's actions do not constitute plain error. The value of the DNA evidence was that it was intended to bolster the State's theory that the victim was tortured by showing that the victim's blood was present throughout the trailer. However, other evidence was introduced establishing that the victim was tortured throughout the trailer, including the results of the blood tests conducted by Vissitte, the testimony of codefendants who participated in the torture, and the statement of defendant himself. Thus, the trial court's admission of the DNA analysis cannot be said to have caused a different result in defendant's trial. This assignment of error is overruled.

[3] Defendant next assigns error in the trial court's allowing Captain Jamison of the Jackson County Sheriff's Department to read during his testimony from notes he took of his interview with the defendant. Defendant argues that the "reading" of the notes, which were a typed version of misplaced, rough handwritten notes, was prejudicial

because it led the jury to believe the notes were defendant's confession. This was exacerbated, defendant contends, by the State's reference to the statements made by the defendant in the interview as a "confession." Defendant maintains that he is entitled to a new trial as a result. We find defendant's contention to be without merit.

The State did not offer the notes in question as a confession of the defendant. Captain Jamison testified that he did not have the defendant review the notes, nor did he attempt to record the interview or make a verbatim transcript of his interview with the defendant. Captain Jamison conceded that the notes at issue were a typed facsimile of his original rough handwritten notes. The question then becomes whether the trial court properly allowed Captain Jamison's use of the notes during his testimony in order to refresh his present recollection.

In *State v. Gibson*, 333 N.C. 29, 424 S.E.2d 95 (1992), *overruled on other grounds by State v. Lynch*, 334 N.C. 402, 432 S.E.2d 349 (1993), this Court clarified the review required by appellate courts in situations involving the use of notes or other statements for refreshing witness recollection:

> In present recollection refreshed the evidence is the testimony of the witness at trial . . . . "Under present recollection refreshed the witness' memory is refreshed or jogged through the employment of a writing, diagram, smell or even touch," and he testifies from his memory so refreshed. *State v. Corn*, 307 N.C. 79, 83, 296 S.E.2d 261, 264 (1982). "Because of the independent origin of the testimony actually elicited, the stimulation of an actual present recollection is not strictly bounded by fixed rules but, rather, is approached on a case-by-case basis looking to the peculiar facts and circumstances present." *State v. Smith*, 291 N.C. [505,] 516, 231 S.E.2d [663,] 670-71 [(1977)].

The rule in *Smith* which we hold controls the resolution of this issue states, "Where the testimony of the witness purports to be from his refreshed memory but is *clearly* a mere recitation of the refreshing memorandum, such testimony is not admissible as present recollection refreshed and should be excluded by the trial judge." *Id.* at 518, 231 S.E.2d at 671. Thus, we must determine whether the spirit of the rule of present recollection refreshed has been violated by testimony which was not the product of a refreshed memory, but clearly nothing more than a recitation of the witness' notes.

*Gibson*, 333 N.C. at 50, 424 S.E.2d at 107. The fact that a witness appears to read from a refreshing memorandum is not a *per se* violation under *Gibson*. Such an interpretation would elevate form above substance. What must be examined is whether the witness has an independent recollection of the event and is merely using the memorandum to refresh details or whether the witness is using the memorandum as a testimonial crutch for something beyond his recall.

A review of the particular facts and circumstances surrounding Captain Jamison's use of his notes during his testimony indicates that certainly the spirit of the present recollection refreshed rule was not violated in this case. Captain Jamison first testified from memory, and in particular detail, about the events surrounding the interview with the defendant. He reviewed the reading of the *Miranda* warnings to defendant by reference to a waiver form signed by the defendant, and Captain Jamison read without objection from that form in describing the beginning of the interview. Captain Jamison then was questioned about the specific contents of the conversation. At that point, he referred to the redraft of his notes made contemporaneously with the interview. Captain Jamison spoke in the second person throughout his testimony about the details of the interview, consistently prefacing his testimony with the phrase, "Thomas [defendant] stated." Further, Captain Jamison's recounting of the interview was interrupted by questions from the prosecutor, to which Jamison answered independently of his notes. This witness had extensive independent recall about the events surrounding the interview and the interview itself. It is thus evident from the full circumstances that this witness used his notes, much like his use of the waiver form, in order to specifically recall for the jury what occurred during his interview with defendant. Accordingly, we hold that the use of these notes in this instance was for the purpose of refreshing recollection to facilitate accurate testimony and as such did not violate the present recollection refreshed rule.

[4] With respect to defendant's contention that the trial court erroneously allowed the State to refer to defendant's interview statements as a "confession" during opening statement and closing argument, we are not persuaded. Defendant made no objection to such reference. "[W]here a party does not object to a jury argument, the allegedly improper argument must be so prejudicial and grossly improper as to interfere with defendant's right to a fair trial in order for the trial court to be found in error for failure to intervene *ex mero motu*." *State v. Fernandez*, 346 N.C. 1, 25, 484 S.E.2d 350, 365 (1997).

Although the statements at issue were not introduced into evidence as a confession, they were sufficiently self-incriminating to be so characterized in argument, and such characterization by the prosecution was not belabored or emphasized. As a result, we hold that the references were not so grossly improper as to amount to a denial of defendant's right to a fair trial. This assignment of error is overruled.

[5] Defendant's next assignment of error involves the trial court's denial of defendant's request to have one of his witnesses declared hostile. At trial, defendant called as a witness Kenneth Fox, the husband of Vickie Fox, defendant's girlfriend. During direct examination, Kenneth Fox testified that he lied to the police when he gave statements implicating the defendant. Defendant attempted to establish the motive for such lying by asking Kenneth Fox a leading question. The trial court sustained the State's objection to the leading question and then denied defendant's motion to have Kenneth Fox declared a hostile witness. Defendant argues that the trial court erred because the record reveals Kenneth Fox was only nominally a defense witness, and that the error was prejudicial because it prevented defendant from establishing Kenneth Fox's motive for lying to the police. We do not agree.

Whether to allow a leading question on direct examination clearly falls within the discretion of the trial court. *State v. Shoemaker*, 334 N.C. 252, 261, 432 S.E.2d 314, 318 (1993). In *State v. Riddick*, 315 N.C. 749, 340 S.E.2d 55 (1986), this Court stated that, "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason . . . ." *Id.* at 756, 340 S.E.2d at 59; *see also Shoemaker*, 334 N.C. at 261, 432 S.E.2d at 318. A careful examination of the record in this case shows that the trial court did not abuse its discretion. The trial court allowed defense counsel considerable latitude in his examination of Kenneth Fox. Defense counsel sought to ask leading questions in order to establish Kenneth Fox's motive for lying to investigating officers about the roles of the defendant and Vickie Fox in the killing of Tony Queen. After the trial court denied the request to have Kenneth Fox declared a hostile witness, defense counsel succeeded in eliciting testimony that Fox's motive for lying to the police about defendant's role in the killing was Fox's anger over defendant living with Fox's wife and his desire to protect her from implication in the killing. This was the full substance of the testimony desired by defendant. Thus, defendant cannot show error, prejudicial or otherwise, by the denial

of his motion to have Kenneth Fox declared a hostile witness. This assignment of error is overruled.

**[6]** Defendant next contends that the trial court erred by denying his motion to provide the jury with transcripts of recorded statements given to the police by codefendants in this case. During the investigation of this case, Kenneth and Vickie Fox were interviewed by the police—first Vickie alone, and then the two of them together. The police tape-recorded both of these interviews. At trial, the defendant introduced the tape recordings into evidence without objection from the State. However, when defendant attempted to introduce transcripts of these recordings, portions of which were allegedly inaudible, the trial court sustained the State's objections on both occasions. Defendant insists that this amounted to a denial of his Sixth Amendment right to present a defense. We find this argument without merit.

Rule 1002 of the North Carolina Rules of Evidence, commonly known as the "best evidence rule," provides that, "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." N.C.G.S. § 8C-1, Rule 1002 (1992). The best evidence rule requires that secondary evidence offered to prove the contents of a recording be excluded whenever the original recording is available. N.C.G.S. § 8C-1, Rules 1002-1004 (1992); 2 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 253-257 (4th ed. 1993). In the present case, the tape recordings themselves were available, were introduced by defendant and were played for the jury. As such, the trial court properly excluded introduction of the transcripts under the best evidence rule. Defendant fails to offer any explanation as to how his constitutional right to present a defense was prejudiced by the denial of his request to introduce, in addition, the transcripts. This assignment of error is overruled.

**[7]** In a related assignment of error, defendant contends that the trial court expressed an impermissible opinion when it prevented defendant *ex mero motu* from using transcripts of codefendants' recorded conversations with police officers. At trial, defendant called as a witness Agent West, the police officer who interviewed Kenneth and Vickie Fox. When West referred to the transcripts of the recorded interviews, the trial court intervened without objection from either party and ordered the witness and defendant to refrain from referring to the transcripts. Defendant argued to the trial court that mention of

the transcripts was necessary because portions of the tape were inaudible. The trial court refused to reverse the ruling, stating, "Well, they've heard the tapes." Defendant asserts that the trial court's response impermissibly conveyed to the jury the opinion that the trial court found the interviews irrelevant. We do not agree.

The trial court must at all times be absolutely impartial, *State v. Brady*, 299 N.C. 547, 264 S.E.2d 66 (1980), and the trial court is prohibited from expressing any opinion in the presence of the jury on any question of fact, *State v. Bearthes*, 329 N.C. 149, 405 S.E.2d 170 (1991); N.C.G.S. § 15A-1222 (1988). However, the trial court also has the duty to ensure that time is not wasted in useless and repetitive presentation of the evidence. *State v. Paige*, 316 N.C. 630, 650, 343 S.E.2d 848, 860 (1986). In the present case, the trial court had already allowed the actual tapes to be introduced into evidence and to be published to the jury. The trial court also had ruled the transcripts inadmissible before Agent West began referring to them in his testimony and before defendant began the disputed line of questioning. Therefore, we hold that the trial court properly exercised discretion in limiting reference to the transcripts, and that the trial court's statement was merely a recognition that the jury had already heard the evidence in question. The statement cannot be fairly interpreted as an impermissible opinion. This assignment of error is overruled.

[8] Defendant next contends that the trial court's denial of a motion for mistrial after allegedly impermissible comments by the State about a codefendant's failure to testify constitutes prejudicial error. Only two of the seven codefendants involved in this case testified in defendant's trial. During defendant's presentation of the evidence, the State cross-examined defense witness Agent West regarding his trip to Georgia with Robert Trantham to locate the victim's body. Agent West noted that he had interviewed Trantham. The State then asked, "And it was heard from everybody else: Will you please tell us what Robert Trantham had to say?" Defendant's objection to this question was sustained, but defendant's motions for a mistrial and for a curative instruction were denied. The State also made references to the lack of Trantham's testimony during its closing argument, stating:

> MR. LEONARD: . . . Mr. Seago [defendant's counsel] talked about Mr. Trantham, the close friend of Mr. York. . . . His best friend, like a brother, his constant companion, the man who saw and knew everything, one way or the other. They've got their contention; we've got ours. Mr. Trantham, the person who knows, would

know one way or the other. Now, two things here. The question I ask, of course, is, why, oh why, did they not call his star number one witness, his best friend. . . .

MR. SEAGO: Objection, Your Honor.

MR. LEONARD: —to court.

THE COURT: Objection sustained.

MR. LEONARD: Excuse me, Your Honor. Mr. Seago says this, he says, "Trantham has a right to remain silent, Fifth Amendment." True, no problem. You know, I abide by the law, and this Court abides by the law. Two things though. A person can be granted immunity. . . . No problem at all. But more importantly than that is, if they had any problem with that proposition, West was on the stand. I didn't—you know, Trantham hadn't come close to the courthouse. My question was, What did he tell you. Objection was made to that and the objection was sustained, because that would be hearsay. But if these gentlemen really wanted you to hear that, they would have let you have heard it—

MR. SEAGO: Objection.

MR. LEONARD: —at that time.

THE COURT: Objection sustained.

Defendant argues that these statements were made solely to prejudice the minds of the jurors and that he is entitled to a new trial as a result. We disagree.

A review of the record indicates that the trial court sustained all of defendant's objections to these allegedly improper statements. The trial court issued general instructions to the jury at the outset of the trial. Among these were instructions regarding the consideration to be given evidence to which an objection had been raised and sustained. These instructions are sufficient to cure any prejudicial effect suffered by defendant regarding evidence to which an objection was raised and sustained. *State v. Franks*, 300 N.C. 1, 265 S.E.2d 177 (1980); *State v. Vines*, 105 N.C. App. 147, 412 S.E.2d 156 (1992). Assuming *arguendo* that the trial court's rejection of defendant's motion for a precautionary instruction was erroneous, it does not appear from the record that the error was prejudicial error within the meaning of N.C.G.S. § 15A-1443(a). That is, it does not appear that but for such error, there was a reasonable possibility that the result

would have been different from that which occurred. *State v. Faison,* 330 N.C. 347, 357, 411 S.E.2d 143, 149 (1991); *State v. Freeman,* 313 N.C. 539, 548, 330 S.E.2d 465, 473 (1985). Robert Trantham was identified and referred to a number of times throughout the trial, including several times by defendant's own testimony. The fact that Trantham was not testifying was readily apparent to the jury, and the questions of the prosecutor which were disallowed cannot reasonably be said to have caused the jury to reach a different result.

Regarding references to Trantham in the State's closing argument, we hold that they were within the wide latitude granted parties during closing argument. During direct examination of the defendant, defendant repeatedly referred to Robert Trantham as having been involved in the circumstances leading to the death of the victim. As such, it was permissible for the State to draw the jury's attention to the failure of the defendant to produce Trantham as a source of exculpatory evidence. *State v. Alston,* 341 N.C. 198, 243, 461 S.E.2d 687, 711-12 (1995), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d 100 (1996); *State v. Tilley,* 292 N.C. 132, 143, 232 S.E.2d 433, 441 (1977). Furthermore, considering the wide latitude granted parties during closing argument, *State v. Worthy,* 341 N.C. 707, 709-10, 462 S.E.2d 482, 483-84 (1995), we do not find the comments to have "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *State v. Green,* 336 N.C. 142, 186, 443 S.E.2d 14, 40, *cert. denied,* 513 U.S. 1046, 130 L. Ed. 2d 547 (1994). Trantham was repeatedly referred to throughout the case and particularly during defendant's presentation of evidence. Therefore, the State's reference to him and to the defendant's failure to have him testify was not improper in the context of this case.

Regarding defendant's requests for a mistrial, this Court has held that "[t]he decision whether to grant a motion for mistrial rests within the sound discretion of the trial judge and will not ordinarily be disturbed on appeal absent a showing of abuse of that discretion." *State v. Primes,* 314 N.C. 202, 215, 333 S.E.2d 278, 286 (1985); *accord State v. King,* 343 N.C. 29, 44, 468 S.E.2d 232, 242 (1996). For the above reasons, the trial court did not abuse its discretion in refusing to grant defendant's motions for a mistrial based on the allegedly improper comments of the prosecutor. This assignment of error is overruled.

[9] In his next assignment of error, defendant contends that the trial court erred by sustaining the State's objection to the proposed testimony of Desiree Acosta, a cellmate of Vickie Fox's. The trial court

**STATE v. YORK**

[347 N.C. 79 (1997)]

conducted a *voir dire* of Acosta out of the presence of the jury. The evidence defendant sought to have introduced involved a letter composed by Acosta, Fox and another cellmate while the three were imprisoned together. Acosta testified that the purpose of the letter was to build confidence between herself and the defendant in order to get defendant to take the entire blame for Queen's death. The defendant argued that the testimony was relevant to show Vickie Fox's manipulative hold over the defendant and to impeach her prior testimony to the contrary. The State objected on the grounds that the testimony was collateral to the issue of the defendant's guilt or innocence and also potentially confusing to the jury. The trial court denied defendant's proffer of this testimony. We hold that the trial court properly excluded Acosta's proposed testimony.

Rule 401 of the North Carolina Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). The testimony proffered by the defendant in this case does not go to prove the existence of any fact that is of consequence in the determination of the charge of murder for which defendant was found guilty. The testimony involved alleged purposes for Vickie Fox's actions while in prison. It did not concern defendant's motives for the killing or any actions taken by defendant in relation to proving his guilt or innocence. As such, the testimony was collateral and therefore irrelevant. Evidence that is not relevant is not admissible. N.C.G.S. § 8C-1, Rule 402 (1992). Even assuming the testimony was relevant, Rule 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (1992). The *voir dire* of witness Acosta revealed that she had been imprisoned for trafficking over seventy-six pounds of marijuana, that her recall of significant events surrounding the drafting of the letter was questionable (including not knowing which portions of the letter were attributable to which of the three women), and that she was speculating on the ultimate purposes underlying the writing of the letter. Thus, the reliability of the testimony regarding the letter was questionable and would likely have confused the jury on a collateral matter. As a result, it was properly excluded by the trial court, and this assignment of error is overruled.

**[10]** Defendant next assigns as error the trial court's denial of his request for jury instructions on accidental death, death by misadventure and intervening agency. Defendant argues as fact: (1) that the victim voluntarily stayed at the trailer, (2) that there was no evidence defendant intended to torture or to kill the victim, and (3) that the actions of Kenneth Fox in binding the victim in the closet were what led to the victim's death. According to defendant, these serve as bases for the requested instructions. We hold defendant's contention to be without merit.

Any defense based on the suggestion that the death was the result of an accident or misadventure must be predicated upon the absence of an unlawful purpose on the part of the defendant. *State v. Faust*, 254 N.C. 101, 103, 118 S.E.2d 769, 777, *cert. denied*, 368 U.S. 851, 7 L. Ed. 2d 49 (1961); *State v. Liner*, 98 N.C. App. 600, 608, 391 S.E.2d 820, 824, *disc. rev. denied*, 327 N.C. 435, 395 S.E.2d 693 (1990). In the present case, abundant evidence shows that the defendant and other individuals intended to punish the victim through cruel and torturous treatment over the course of numerous days. Part of that treatment was binding defendant and confining him in a closet. The cumulative effect of the torturous treatment was the death of the victim. Therefore, there is no basis for defendant's requested instructions, and this assignment of error is overruled.

**[11]** In his final assignment of error, defendant asserts that the trial court erroneously instructed the jury on the theory of acting in concert. Defendant contends there was insufficient evidence in this case to prove that each of the codefendants shared a common plan or scheme to intentionally inflict torture on the victim. Defendant also argues that the acting in concert instruction lessened the State's burden of proof by allowing the jury to convict the defendant without the particular *mens rea* for the crimes charged. We reject this contention.

The common thread running throughout this case was the desire of defendant and the other residents of Vickie Fox's trailer to inflict punishment on the victim for his admission to molesting Fox's daughter. The punishment was accomplished by repeated acts of brutality and torture, including persistent beating and kicking of the victim, shaving his head, scraping the word "faggot" on his arm, burning his genitals and legs, and forcing him to ingest his own urine. There was clearly a common plan or purpose among defendant and his codefendants to intentionally torture the victim. Furthermore, the trial court in this case instructed the jury only on the theories of murder by tor-

ture and felony murder. In *State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986), this Court held that premeditation and deliberation is not an element of the crime of first-degree murder perpetrated by means of torture. *Id.* at 203, 344 S.E.2d at 781; *see also State v. Anderson*, 346 N.C. 158, 161, 484 S.E.2d 543, 545 (1997). In *State v. Swift*, 290 N.C. 383, 226 S.E.2d 652 (1976), we held that premeditation and deliberation is not an element of felony murder. *Id.* at 407, 226 S.E.2d at 669. Further, intent to kill is not an essential element of first-degree murder either by torture or under the felony murder rule. *Johnson*, 317 N.C. at 203, 344 S.E.2d at 781. Thus, the State was not required to prove that the defendant possessed a particular *mens rea*. All of the elements for acting in concert were met, and the trial court did not err in its jury instructions. This assignment of error is overruled.

For the foregoing reasons, we hold that defendant received a fair trial, free of prejudicial error.

NO ERROR.