IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-592

 No. COA20-173

 Filed 2 November 2021

 Wake County, Nos. 17CRS221514, 221515

 STATE OF NORTH CAROLINA

 v.

 DEVONTE GLENN JONES, Defendant.

 Appeal by defendant from judgment entered on or about 18 June 2019 by Judge

 Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 9

 March 2021.

 Attorney General Joshua H. Stein, by Senior Deputy Attorney General Amar
 Majmundar, for the State.

 Daniel J. Dolan for defendant.

 STROUD, Chief Judge.

¶1 Devonte G. Jones (“Defendant”) appeals from an amended judgment1 entered

 1 The date on the amended judgment is 18 June 2019, but that date is likely an error.

 The original judgment was dated 18 June 2019 as well. The motion to amend the judgment—
 arguing the attempted first degree murder counts were imposed as class B1 / level 1 felonies
 when they should have been class B2 / level 1 felonies—was filed on 25 June 2019. The order
 on the motion to amend the judgment and a handwritten note from the judge explaining his
 reasoning are dated 26 June 2019. Thus, the amended judgment likely was from 26 June
 2019 rather than the 18 June 2019 date on the amended judgment itself. Because Defendant
 has filed a petition for writ of certiorari that we grant—which highlighted this issue— the
 date discrepancy does not impact our analysis.
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 following a jury trial. The judgment included two counts of each of the following

 offenses: attempted first degree murder, assault with a deadly weapon with intent to

 kill inflicting serious injury, and discharging a weapon into occupied property

 resulting in serious bodily injury. Defendant argues the trial court erred in admitting

 testimony of a witness for the State who refreshed his recollection using a letter he

 had previously written because the witness used the letter as a testimonial crutch

 rather than a mere aid. Defendant also argues the trial court erred by admitting the

 letter into evidence as a prior consistent statement that corroborated the witness’s

 testimony. Because the witness was not merely reciting from the refreshing aid and

 the letter was properly independently admitted as a prior consistent statement, we

 find no error as to the letter. In addition to the letter, Defendant argues the trial

 court plainly erred when instructing the jury on attempted first degree murder.

 Because Defendant has not shown the alleged errors probably impacted the jury

 verdict, we also find no error as to the jury instructions. Thus, we conclude there was

 no error on substantive matters in this case. However, because Defendant correctly

 indicates the amended judgment contains a clerical error that lists attempted first

 degree murder as a class B1 felony rather than class B2 felony, we remand to the

 trial court for correction of this error.

 I. Background

¶2 The State’s evidence tended to show that on the night of 9 September and the
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 early morning hours of 10 September 2017, Leroy Brickhouse, his cousin Marlon

 Taylor, his co-worker Mike Jeffreys, and others were going out in downtown Raleigh

 to celebrate Taylor’s upcoming birthday. During the night out, the group got into a

 verbal altercation with another group of people that included Defendant. Police in

 the area quickly intervened and broke up the altercation. About 45 minutes after the

 altercation, Brickhouse and Taylor returned to their cars. As Brickhouse’s coworker

 was saying goodnight, another car came and obstructed their cars. Defendant exited

 the other car and began shooting with a semi-automatic rifle at the vehicle with

 Brickhouse and Taylor inside, as well as at the co-worker’s vehicle. The co-worker

 returned to his vehicle and escaped. While Brickhouse drove away, Defendant

 continued to fire at his vehicle, and both Brickhouse and Taylor were shot.

 Brickhouse was shot in the chest, and Taylor was shot in the head. Defendant was

 arrested for the shootings and charged with two counts each—one set for Brickhouse

 and one set for Taylor—of: Attempted First Degree Murder, Assault with a Deadly

 Weapon with the Intent to Kill Inflicting Serious Injury (AWDWIKISI), Discharging

 a Firearm into an Occupied Vehicle Resulting in Serious Bodily Injury, Conspiracy to

 Commit Attempted First Degree Murder, Conspiracy to Commit AWDWIKISI, and

 Conspiracy to Commit Discharging a Firearm into an Occupied Vehicle Resulting in

 Serious Bodily Injury.

¶3 While in jail awaiting trial, Defendant shared a cell block with Ronald
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 Cameron. Defendant and Cameron talked about Defendant’s case, and Cameron

 wrote a letter to the district attorney detailing their conversations. In the letter,

 Cameron recounted how he knew Defendant as well as that Defendant told him

 Defendant was involved with a shooting in Raleigh with an AK-47, Defendant had

 God with him or he would be facing two murder charges, and that Defendant had

 asked Cameron to dispose of the weapon for him if Cameron was able to get released

 on bond.

¶4 At trial, Cameron initially testified Defendant told him Defendant was charged

 with shooting two guys, one in the head and one in the chest, and that God was with

 him or Defendant would be charged with murder. At that point, Cameron initially

 said, “I don’t think so, sir” when asked if Defendant had mentioned further details.

 Cameron then mentioned he had written a letter to the district attorney’s office

 detailing his conversations with Defendant. Over Defendant’s objections, including

 that Cameron did not “remember anything else about this” and therefore could not

 use the letter to refresh his recollection, the trial court allowed the State to use the

 letter to refresh Cameron’s memory. After reading the letter, Cameron said it had

 refreshed his recollection “[q]uite a bit” such that he “remember[ed] the things [in the

 letter] from the conversation that me and him [Defendant] had.” Cameron then

 testified he recalled Defendant had said Defendant used an AK-47 in the shooting.

 Following that, Cameron twice started answers by referencing that he wrote in the
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 letter certain information, was told not to just say what was written, and then said,

 “I can’t say then” when asked if there was any other information that he

 independently remembered apart from the letter. Following that exchange, Cameron

 testified further about his conversations with Defendant without additional reference

 to the letter. The further testimony included Cameron recounting the street name—

 and later on cross examination a building landmark—where Defendant told him the

 gun used in the shooting could be found, details which were not included in the letter

 to the district attorney.

¶5 After Cameron finished testifying, the trial court found the letter was properly

 used to refresh Cameron’s recollection. The trial court also admitted the letter itself

 into evidence, over Defendant’s objections, on the grounds that the letter was a prior

 consistent statement that could be admitted to corroborate Cameron’s testimony.

¶6 Defendant presented an alibi defense at trial. Defendant admitted he had been

 in the verbal altercation earlier in the night with the group that included Brickhouse

 and Taylor. Following the police dispersing the groups involved in the altercation,

 Defendant spent time searching for his cell phone after discovering it was lost.

 Defendant testified he then went to his sister’s house and did not know any details

 about the shooting in downtown Raleigh until he was arrested. Defendant also

 specifically denied that he told Cameron that he used an AK-47 in the shooting and

 denied that he asked Cameron to get rid of the gun for him. Defendant’s sister and
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 her friend also testified Defendant left Raleigh and went to his other sister’s house,

 and the other sister testified Defendant came and slept at her house.

¶7 Following Defendant’s case and closing arguments, the trial court instructed

 the jury. The trial judge primarily relied on the pattern jury instructions when

 crafting the instructions used in this case. He also explained to the parties that his

 plan was to give each instruction only once even though there were two counts of each

 charge, although he made clear he was “glad to hear your [the parties’] suggestions

 on this.” Aside from asking to have language relating to an alibi defense read during

 the instructions on each substantive offense rather than only the first one, which the

 trial court rejected, Defendant did not offer any suggestions, corrections, or objections

 to the instructions. Defendant also did not object after the instructions were read to

 the jurors.

¶8 The jury returned verdicts finding Defendant guilty of all charges. The trial

 judge arrested judgment as to all six conspiracy counts and entered judgment on the

 remaining counts. The trial judge amended the initial judgment to correct the

 classification of attempted first degree murder from a Class B1 / Level One judgment

 to a Class B2 / Level One judgment, and Defendant was sentenced to 140 to 180

 months imprisonment. However, while the first page of the amended judgment

 covering 17CRS221514 reflects attempted first degree murder as a class B2 felony,

 the last page lists the attempted first degree murder conviction in 17CRS221515 as
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 a class B1 felony.

¶9 Defendant gave oral notice of appeal following the announcement of the

 judgment and filed written notice of appeal following entry of the written judgment.

 However, Defendant did not file any additional notice of appeal following the entry of

 the amended judgment. See supra footnote 1 (explaining likely date of amended

 judgment, which is after written notice of appeal was filed on 25 June 2019).

 Defendant filed a petition for writ of certiorari “[o]ut of an abundance of caution”

 should we “determine that he has lost his appeal of right.”

 II. Petition for Writ of Certiorari

¶ 10 Petitions for writs of certiorari can be issued “in appropriate circumstances” to

 permit review of judgments “when the right to prosecute an appeal has been lost by

 failure to take timely action.” N.C. R. App. P. 21(a)(1); see also N.C. Gen. Stat. § 15A-

 1448 (2019) (indicating the rules of appellate procedure govern issues regarding

 notice of appeal and petitions for writs of certiorari). In turn, an appeal in a criminal

 action may be taken by giving oral notice of appeal at trial or by filing a written notice

 of appeal within fourteen days after entry of the judgment being appealed. N.C. R.

 App. P. 4(a). Here, Defendant did not renew an oral notice of appeal nor file a written

 notice of appeal following the entry of the amended judgment, and his petition

 highlights that absence as the reason a writ of certiorari may be necessary.

¶ 11 To the extent a petition for writ of certiorari is necessary, we grant it in our
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 discretion. In State v. Briggs, this Court faced a similar issue where the defendant

 failed to give notice of appeal from an amended judgment. 249 N.C. App. 95, 97, 790

 S.E.2d 671, 673 (2016). The State did not address the issue, and the defendant did

 not file a separate petition for a writ of certiorari, but this Court decided to treat the

 defendant’s appellate brief as a petition and granted it. Id. Here, the State similarly

 did not file any response to Defendant’s petition or raise the issue in its brief. Unlike

 in Briggs, Defendant here went further and filed a petition. As in Briggs, we grant

 the petition for a writ of certiorari to the extent it is necessary.

 III. Issues Related to the Letter to the District Attorney

¶ 12 Defendant argues the trial court erred in admitting the testimony of Ronald

 Cameron, a witness for the State. Defendant contends the trial court erred in

 allowing Cameron to testify after reviewing a letter he had written to the district

 attorney with information inculpating Defendant. The trial court then also erred,

 Defendant argues, by admitting the letter into evidence as a prior consistent

 statement to corroborate the testimony Cameron had given after he reviewed the

 letter.

¶ 13 Specifically, Defendant relies on State v. York, 347 N.C. 79, 489 S.E.2d 380

 (1997), to argue the trial court erred by allowing Cameron to testify while using the

 letter as a testimonial crutch rather than merely as a means to presently refresh

 Cameron’s recollection. Defendant argues that by having Cameron use the letter as
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 a testimonial crutch, the State was able to “get the information before the jury despite

 Mr. Cameron’s lack of knowledge as to its content.” Defendant then contends the

 trial court “compounded” the error by admitting the letter into evidence alongside

 Cameron’s testimony. Defendant argues this sequence of events ultimately created

 a situation where “[t]he prosecutor was permitted to bootstrap the evidence in

 through the letter and the letter in through the bootstrapped evidence.” Defendant

 finally argues the use of the letter as a testimonial crutch and subsequent

 introduction of the letter into evidence prejudiced him, thereby entitling him to a new

 trial.

 A. Admissibility of Witness’s Testimony After Refreshing Recollection

¶ 14 The letter was admitted into evidence as a prior consistent statement to

 corroborate Cameron’s testimony, and Cameron’s testimony in part came after

 reviewing the letter on the grounds of refreshing his recollection. Therefore, the first

 issue to address is whether the letter was properly used to aid Cameron’s testimony

 by refreshing his recollection or whether it was impermissibly used as a testimonial

 crutch.

 1. Standard of Review

¶ 15 Defendant states, and the State agrees, this issue should be reviewed de novo.

 But cases involving a witness’s use of a memory aid to refresh his recollection are

 reviewed for abuse of discretion. State v. Black, 197 N.C. App. 731, 733, 678 S.E.2d
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 689, 691 (2009) (citing State v. Smith, 291 N.C. 505, 518, 231 S.E.2d 663, 672 (1977)).2

 “An abuse of discretion results only where a decision is manifestly unsupported by

 reason or so arbitrary that it could not have been the result of a reasoned decision.”

 Id., 197 N.C. App. at 733, 678 S.E.2d at 691 (citation and quotation marks omitted).

 2. Analysis

¶ 16 In Smith, our Supreme Court addressed the legal rules regarding present

 recollection refreshed testimony. First, Smith distinguished use of an item to aid a

 witness to refresh recollection from a writing or recording used as a past recollection

 recorded, which is now done pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(5) (2019).

 291 N.C. at 516, 231 S.E.2d at 670. Present recollection refreshed involves witnesses

 with a “sufficiently clear recollection” such that writings, memoranda or other aids

 “‘jog[]’” their memories so that they can testify from their own recollection. Id.

 Because the testimony comes from the witness’s own independent recollection,

 present recollection refreshed does not involve “fixed rules but, rather, is approached

 on a case-by-case basis looking to the peculiar facts and circumstances present.” Id.,

 291 N.C. at 516, 231 S.E.2d at 670–71. However, because the standards around

 present recollection refreshed are looser, the aid must also “actually ‘refresh’” the

 witness’s memory. Id., 291 N.C. at 517–18, 231 S.E.2d at 671. “Where the testimony

 2 As Black explains, York, upon which Defendant relies, is “a later case which applied

 Smith.” 197 N.C. App. at 735, 678 S.E.2d at 692.
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 of the witness purports to be from his refreshed memory but is clearly a mere

 recitation of the refreshing memorandum, such testimony is not admissible as

 present recollection refreshed and should be excluded by the trial judge.” Id., 291

 N.C. at 518, 231 S.E.2d at 671 (emphasis in original). If there is “doubt as to whether

 the witness purporting to have a refreshed recollection is indeed testifying from his

 own recollection, the use of such testimony is dependent upon the credibility of the

 witness and is a question for the jury.” Id., 291 N.C. at 518, 231 S.E.2d at 671–72.

¶ 17 In Smith, the evidence was contradictory as to whether a transcript refreshed

 the witness’s memory or gave her a script to recite at trial. Id., 291 N.C. at 517, 231

 S.E.2d at 671. At times the witness said the testimony was from her own memory,

 but at other times she said some of it was from her memory and some of it was not.

 Id. Because the witness did not clearly merely recite the refreshing transcript, the

 Supreme Court found no abuse of discretion in the trial judge’s decision not to strike

 the testimony. Id., 291 N.C. at 518, 231 S.E.2d at 671–672.

¶ 18 In York, the Supreme Court then further explained the test of admissibility of

 testimony based upon refreshed recollection. First, the Supreme Court explained

 that it would “elevate form above substance” to focus on whether a witness appears

 to read from a refreshing aid. See York, 347 N.C. at 89, 489 S.E.2d at 386 (explaining

 a witness appearing to read from a refreshing memorandum is not a per se violation).

 Rather, the reviewing court examines “whether the witness has an independent
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 recollection of the event and is merely using the memorandum to refresh details or

 whether the witness is using the memorandum as a testimonial crutch for something

 beyond his recall.” Id. Using that test, the court found the notes were used to refresh

 recollection permissibly. Id. The court noted the witness testified from memory and

 in detail about the events surrounding the interview with the defendant, spoke in the

 second person—i.e. the defendant stated—throughout his testimony, and answered

 the prosecutor’s questions independent of the notes. Id.

¶ 19 This Court has since applied York in two published opinions, Black and State

 v. Harrison, 218 N.C. App. 546, 721 S.E.2d 371 (2012). In Black, the defendant

 argued a witness for the State “merely parroted” the information in the transcript

 from his interview with police. 197 N.C. App. at 733, 678 S.E.2d at 691. This Court

 concluded the trial court did not abuse its discretion where the witness “testified to

 some of the events of the night in question before being shown the transcript . . . was

 equivocal about whether or not he remembered making the statements found [in the

 transcript]” until after hearing the audio recording of the interview, and where the

 witness “then testified in detail to the events of the night in question, apparently

 without further reference to the interview transcript.” Id., 197 N.C. App. at 736, 678

 S.E.2d at 692. This Court ultimately concluded it was “not a case where the witness’

 testimony was ‘clearly a mere recitation of the refreshing memorandum.’” Id.

 (quoting Smith, 291 N.C. App. at 518, 231 S.E.2d at 671 (emphasis in original)).
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

¶ 20 In Harrison, the defendant argued the trial court committed plain error by

 allowing a witness for the State to read her prior police statement about a

 conversation with the defendant to the jury as a past recollection recorded, and the

 State argued the trial court properly admitted the testimony as present recollection

 refreshed. 218 N.C. App. at 548–50, 721 S.E.2d at 374–75. This Court concluded the

 statement was used to refresh the witness’s recollection. Id., 218 N.C. App. at 552,

 721 S.E.2d at 376. This Court also concluded that the witness “was not using her

 prior statement as a testimonial crutch for something beyond her recall” because the

 witness “had an independent recollection of her conversation with defendant as well

 as of making her statement to the investigator . . . affirmed that her recollection had

 been refreshed . . . testified from memory, and that testimony included some details

 that were not contained in the statement.” Id.

¶ 21 Here, this case is “not a case where the witness’ testimony was ‘clearly a mere

 recitation of the refreshing memorandum.’” Black, 197 N.C. App. at 736, 678 S.E.2d

 at 692 (quoting Smith, 291 N.C. App. at 518, 231 S.E.2d at 671 (emphasis in

 original)). First, as in Black, Cameron testified to part of his conversation with

 Defendant before using the letter to refresh his recollection. Id. Specifically,

 Cameron recounted how Defendant had told him that God was with him or Defendant

 would be in jail for murder. Second, as in Harrison, Cameron had independent

 recollection of sending the letter to the district attorney, testifying about how he
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 wrote the letter before then being handed the letter. Harrison, 218 N.C. App. at 552,

 721 S.E.2d at 376. Finally, as in Harrison, Cameron’s testimony included some

 details that were not contained in the letter. Id. Specifically, Cameron twice, once

 on direct examination and once on cross examination, gave the location of the firearm

 down to the street where it was located and the nearby building whereas in the letter

 he only stated that Defendant had told him how to find the weapon. Based on these

 facts, it is not clear that Cameron merely recited the letter after it was used to refresh

 his recollection and as such the trial judge did not abuse his discretion in allowing

 Cameron to use the letter to refresh his recollection.

¶ 22 Defendant asserts several reasons we should conclude otherwise, but none of

 them persuade us that the trial judge abused his discretion. First, Defendant argues

 Cameron’s testimony indicated “he had no other recollection of any alleged

 conversation’s [sic] between him and [Defendant]” before being shown the letter to

 refresh his recollection. While Cameron did say he did not think Defendant had told

 him any more facts of the case before being shown the letter, Cameron also testified

 that he wrote the letter to the district attorney’s office, which was an important factor

 in allowing the witness’s testimony in Harrison. 218 N.C. App. at 552, 721 S.E.2d at

 376. Further, a witness’s lack of ability to recall additional information is the very

 reason the present recollection refreshed doctrine exists. See Smith, 291 N.C. at 516,

 231 S.E.2d at 670 (recounting how the ability to recall is “subject to obvious
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 limitations” and present recollection refreshed evolved as a way to address the issue).

¶ 23 Second, Defendant notes “Mr. Cameron had talked with the prosecutor’s [sic]

 twice before he testified. Then the prosecutor spoke with Mr. Cameron about the

 letter despite Mr. Cameron still being a witness.” The trial judge inquired into the

 time when the prosecutor spoke with Cameron during a recess in the middle of his

 testimony. The prosecutor said he asked, “Did it refresh your recollection?” and then

 did not provide Cameron with any information or “coach him in any way other than

 ask the question.” The trial judge found it was a discovery issue resolved by putting

 “on the record the substance of the conversation” and found that nothing further

 needed to be done. Given that record and the fact that no authority we have found

 suggests this is a relevant consideration for allowing testimony based on a refreshed

 recollection, we still find the trial judge did not abuse his discretion in allowing

 Cameron’s testimony.

¶ 24 Third, Defendant points out that “the prosecutor asked Mr. Cameron many

 leading questions about things stated in the letter.” The prosecutor did ask Cameron

 some leading questions, but Defendant’s attorney did not object to the questions.

 Further, as Defendant points out in a footnote in his own brief, the Supreme Court

 has ruled that leading questions may be allowed when “aid[ing] the witness’s

 recollection.” State v. Greene, 285 N.C. 482, 492, 206 S.E.2d 229, 236 (1974).

¶ 25 Fourth, Defendant alleges evidence of error in that Cameron “gave generalized
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 details about a shooting” and initially testified about details “not even included in the

 letter.” The generalized statements indicate the lack of ability to recall that present

 recollection refreshed aims to address. See Smith, 291 N.C. at 516, 231 S.E.2d at 670

 (recounting the reason for present recollection refreshed doctrine). Further, as laid

 out above, Cameron’s testimony about details not included in the letter refutes rather

 than supports Defendant’s position because it indicates a witness did not clearly give

 a mere recitation of the refreshing aid. See Harrison, 218 N.C. App. at 552, 721

 S.E.2d at 376 (finding no error in part because witness recalled events outside the

 refreshing aid).

¶ 26 Fifth, Defendant argues the Court “should also factor in the circumstances

 surrounding the witness in determining if the letter was used as a testimonial crutch”

 before pointing out “Mr. Cameron’s credibility was very questionable.” We first note

 Defendant cites no support for the proposition that we should consider the witness’s

 circumstances in this analysis. Even if Cameron’s circumstances may call his

 credibility into question, the credibility of the witness is a question for the jury,

 including the consideration of whether the witness purporting to have a refreshed

 recollection is testifying from such recollection. Smith, 291 N.C. at 518, 231 S.E.2d

 at 671–72.

¶ 27 Finally, Defendant notes “Mr. Cameron specifically tried to testify about what

 was written in the letter rather than from his own independent recollection. Mr.
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

Cameron readily acknowledged that he could not answer if there was other

information that he independently remembered apart from the letter.” Defendant

later discusses this same point in the trial proceedings when trying to distinguish

Black. According to Defendant, unlike the witness in Black, Cameron allegedly

“needed to further refer to State’s Exhibit 152 [the letter] in order to testify.”

Defendant is correct that a couple of times Cameron started answers by saying that

he wrote in the letter certain information and that he responded, “I can’t say then”

when asked if there was any other information that he independently remembered

apart from the letter. However, immediately after that statement, Cameron then

said he remembered Defendant telling him an AK-47 assault rifle was used in the

shooting and that his cell phone “was dropped.” Additionally, before that part of the

testimony, Cameron made clear the letter independently refreshed his recollection:

 Q. Now, having reviewed that letter, does that aid you
 in your testimony at all?
 A. Yes, it does.
 Q. Does it refresh any recollection about conversations
 and contents of conversations that you may or may not
 have had with the defendant.
 A. Quite a bit, sir.
 Q. Why does it quite a bit refresh your recollection?
 A. There are some things that I left out that after re-
 reading what I wrote the first time when it was fresh in my
 head that I put when I first put it down on paper that it
 brought it back.
 Q. Now that you have read it and brought it back, does
 it bring it back only because you read it or do you have an
 independent recollection, remember those things?
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 A. No, I remember the things from the conversation that
 me and him had.

 (Emphasis added.) Thus, at some times, Cameron said he was testifying from

 memory. In Smith, the court faced a similar situation where at times the witness

 said she was testifying from her own memory and at other times acknowledged some

 of the testimony was not from her memory. Smith, 291 N.C. at 517, 231 S.E.2d at

 671. There, the court found the trial judge did not abuse his discretion in allowing

 the testimony because the witness did not clearly provide a mere recitation of the

 refreshing memorandum. Id., 291 N.C. at 518, 231 S.E.2d at 671–72. Likewise here,

 it is not clear Cameron was merely reciting the letter at trial or using it as a

 testimonial crutch, so we find that the trial judge’s decision to allow the testimony

 does not amount to an abuse of discretion.

 B. Admissibility of the Letter

¶ 28 Having concluded the letter was properly used to refresh Cameron’s

 recollection, we now turn to the second issue Defendant raises in relation to the letter,

 whether it was error to admit the letter into evidence.

 1. Standard of Review

¶ 29 “When preserved by an objection, a trial court’s decision with regard to the

 admission of evidence alleged to be hearsay is reviewed de novo.” State v. Johnson,

 209 N.C. App. 682, 692, 706 S.E.2d 790, 797 (2011). Here, Defendant objected that
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 the letter was an out-of-court statement—and therefore inadmissible hearsay—when

 the State made a motion to get a ruling on the letter’s admissibility outside of the

 presence of the jury and later renewed his objection when the State moved in front of

 the jury to admit the letter. Therefore, we review de novo the admission of the letter

 into evidence.

 2. Analysis

¶ 30 “[A] writing used to refresh recollection is not admissible because it was used

 to refresh the witness’s recollection, but it may be admissible for independent

 reasons.” Harrison, 218 N.C. App. at 551, 721 S.E.2d at 375; see also State v. Spinks,

 136 N.C. App. 153, 160, 523 S.E.2d 129, 134 (1999) (“The use of a document in order

 to refresh a witness’ recollection does not make it admissible if offered by the party

 calling the witness, although it may be admissible for other reasons.”). Thus, the

 question is whether there was an independent basis to admit the letter into evidence.

¶ 31 In admitting the letter into evidence, the trial court made clear the

 independent basis upon which its ruling relied. Specifically, the trial court found the

 letter was admissible as a “prior consistent statement[] to corroborate the person’s

 testimony.” The trial court made this ruling over the objections of Defendant that

 the letter was not a prior recorded recollection under North Carolina General Statute

 § 8C-1, Rule 803(5) (2019) and was an out of court statement to the extent it was used

 to refresh Cameron’s recollection. As the trial court’s ruling already contains a
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 potential independent ground of admission, we rely on that potential ground. Thus,

 the question is whether the trial court erred in ruling the letter was admissible as a

 prior consistent statement.

¶ 32 Admission of prior consistent statements is “[o]ne of the most widely used and

 well-recognized methods of strengthening the credibility of a witness.” State v.

 Locklear, 320 N.C. 754, 761–62, 360 S.E.2d 682, 686 (1987). The idea behind the

 method “rests upon the obvious principle that, as conflicting statements impair, so

 uniform and consistent statements sustain and strengthen [the witness’] credit before

 the jury.” State v. Levan, 326 N.C. 155, 167, 388 S.E.2d 429, 435 (1990) (quoting

 Jones v. Jones, 80 N.C. 246, 249 (1879)) (alteration in original).

¶ 33 Prior consistent statements are admissible because they are “not offered for

 their substantive truth and consequently [are] not hearsay.” Id. “To be admissible,

 the prior consistent statement must first [ ] corroborate the testimony of the witness.”

 State v. Lee, 348 N.C. 474, 484, 501 S.E.2d 334, 341 (1998). Corroborating statements

 “strengthen” and “add weight or credibility to a thing by additional and confirming

 facts or evidence.” Levan, 326 N.C. at 166, 388 S.E.2d at 435 (internal quotations

 omitted). Still, the statements offered as prior consistent statements need not align

 precisely with the testimony of the witness whose credibility will be strengthened.

 The prior statement “may contain new or additional information when it tends to

 strengthen and add credibility to the testimony which it corroborates.” State v. Ligon,
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 332 N.C. 224, 237, 420 S.E2d 136, 143 (1992) (internal quotations omitted); see also

 Locklear, 320 N.C. at 762, 360 S.E.2d at 686 (“If previous statements offered in

 corroboration are generally consistent with the witness’ testimony, slight variations

 between them will not render the statements inadmissible.”). But a past statement

 that “actually directly contradict[s] . . . sworn testimony” is not admissible as a prior

 consistent statement. State v. McDowell, 329 N.C. 363, 384, 407 S.E.2d 200, 212

 (1991) (quoting State v. Burton, 322 N.C. 447, 451, 368 S.E.2d 630, 632 (1988))

 (ellipses in original).

¶ 34 The letter at issue here qualifies as a prior consistent statement under those

 standards. The letter corroborates Cameron’s testimony both as to how he came to

 have the information about Defendant’s crime as well as the information about

 Defendant’s crime to which Cameron testified. The letter reinforces Cameron’s

 testimony that he knew Defendant as “Jones” or “Rage” and that they shared a cell

 block together. Further, the letter corroborates Cameron’s testimony regarding the

 location of the shooting on Glenwood Avenue, that Defendant used an AK-47 in the

 shooting, that Defendant lost his cell phone at the scene of the shooting, and that

 Defendant told Cameron God was with Defendant or he would be facing a murder

 charge. The letter is thus exactly the type of confirming evidence that defines

 corroboration. Levan, 326 N.C. at 166, 388 S.E.2d at 435.

¶ 35 Cameron’s testimony only diverged from the letter on one occasion, and that
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 instance does not undermine the letter’s status as a prior consistent statement. In

 the letter, Cameron wrote that Defendant’s co-defendant was “his sister [sic] baby

 daddy.” (Capitalization altered.) At trial, Cameron initially testified Defendant said

 his co-defendant was “his baby mama’s brother or something like that” before

 admitting on cross, “I don’t remember exactly.” Cameron’s testimony indicates he

 failed to remember something he wrote in the letter. Since the letter did not “actually

 directly contradict[]” Cameron’s testimony, this difference does not undermine the

 letter’s status as a prior consistent statement. See McDowell, 329 N.C. at 384, 407

 S.E.2d at 212 (explaining an actual direct contradiction prevents evidence from being

 a prior consistent statement) (internal quotations omitted).

¶ 36 Defendant’s own prior challenge to Cameron’s use of the letter to refresh his

 recollection reinforces how the letter is a prior consistent statement. Defendant

 argues on the refreshed recollection issue that the State was able to “get the

 information before the jury despite Mr. Cameron’s lack of knowledge as to its

 content.” In other words, Defendant argues Cameron only testified to the contents of

 the letter itself because he did not remember anything independently of the letter.

 While above we found Cameron independently recalled the conversations to which he

 testified, that ruling does not change the similarity between Cameron’s testimony

 and the letter that Defendant highlights. That parallel between the testimony and

 letter makes the letter a prior consistent statement. See Levan, 326 N.C. at 166, 388
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 S.E.2d at 435 (defining corroboration to include “confirming facts or evidence”

 (internal quotations omitted)).

¶ 37 Defendant makes two arguments as to why we should conclude the letter is

 not a prior consistent statement, but neither argument persuades us. First,

 Defendant argues “the jury was not provided with a limiting instruction that State’s

 Exhibit 152 [the letter] was only to be used for corroborative purposes.” However,

 Defendant did not request a limiting instruction when the letter was introduced into

 evidence. By failing to request the instruction, Defendant waived the issue on appeal.

 State v. Joyce, 97 N.C. App. 464, 469–70, 389 S.E.2d 136, 140 (1990) (ruling the

 defendant waived his argument about the lack of limiting instruction as to a

 statement “for the purpose of corroborating” the out-of-court declarant’s in-court

 testimony because the defendant failed to request such instruction). Additionally,

 the trial court gave a general jury instruction about “Impeachment or Corroboration

 by Prior Statement” that made clear the prior statement could only be used for

 corroborative purposes. (Capitalization altered.)

¶ 38 Second, Defendant notes the “prosecutor did not provide the same rationale for

 admission” as the trial court, i.e. that the letter was admissible as a prior consistent

 statement. While the prosecutor did not use the words prior consistent statement,

 his explanation to the trial court made clear that was the basis. In relevant part, the

 discussion occurred as follows:
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 THE COURT: This is -- it was used to do refresh his
 recollection. It’s not a memorandum of a matter which a
 witness once had knowledge, but now has insufficient
 recollection.
 This was used to refresh his recollection and it’s
 being offered as a prior consistent statement is my
 understanding.
 So, Mr. Latour.
 MR. LATOUR: In part, that is why it was used then.
 Now I am introducing it as the letter that he wrote that was
 testified about and that the defendant, through his
 attorney, asked very specific questions about things that
 were written in that letter, and therefore I would say it
 opens the door for that.
 The letter has been authenticated ad nauseam by
 him that it is something that he wrote. Now whether the
 contents of it -- I would submit to you none of the contents
 of it are hearsay and would therefore fall under none of
 those issues that the defendant is objecting about it being
 admitted under.

 (Emphasis added.) Two parts of this discussion are especially relevant. First, the

 attorney for the State indicated he was introducing the letter in part based on the

 fact that Cameron testified about it. Second, the trial judge did not offer the prior

 consistent statement rationale to the State, rather he believed that is why the State

 itself had offered the letter into evidence. This distinction makes clear the prior

 consistent statement reasoning originated with the State rather than the trial court.

¶ 39 Having rejected Defendant’s counter arguments, we conclude after de novo

 review that the letter was admissible as a prior consistent statement. Therefore, we

 conclude the trial court did not err on either issue related to the letter.
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 IV. Jury Instructions

¶ 40 In addition to the arguments related to the letter, Defendant also argues the

 trial court plainly erred when instructing the jury on attempted first degree murder.

 Specifically, Defendant first argues the trial court plainly erred when, rather than

 using the pattern jury instruction for attempted first degree murder, it “fashioned its

 own instruction[s]” combining the pattern jury instructions on general attempt and

 on first degree murder. Defendant also contends the trial court should have included

 the elements of attempted first degree murder in the final mandates. Finally,

 Defendant asserts plain error on the basis that the trial court only provided

 instructions on the first count of attempted first degree murder and did not repeat

 the instructions for the second count. Defendant then argues the erroneous

 instructions “resulted in fundamental error that had a probable impact on the jury’s

 verdict” because there was not “overwhelming evidence of guilt” in this case, thereby

 addressing the prejudice prong of plain error. As a result, Defendant asserts he is

 entitled to a new trial.

 A. Standard of Review

¶ 41 Defendant admits he did not object to the allegedly erroneous jury instructions

 at trial and therefore argues plain error should apply. While the State also says plain

 error should apply, it argues in a footnote that in the past this would have been

 invited error under State v. White, 349 N.C. 535, 508 S.E.2d 253 (1998). The State
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 contends this standard was only recently modified by this Court in State v. Chavez,

 270 N.C. App. 748, 842 S.E.2d 128 (2020). As the State notes, the North Carolina

 Supreme Court reviewed Chavez. State v. Chavez, 2021-NCSC-86. While the

 Supreme Court did not address the invited error versus plain error issue directly, it

 applied plain error review in a case where the defendant did not object to an allegedly

 erroneous jury instruction on conspiracy to commit murder. Id. ¶¶ 10–11. Based on

 that ruling and the fact that plain error review typically applies to instructional error,

 we will apply plain error review, rather than review for invited error. 3 State v.

 Lawrence, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012).

¶ 42 In the definitive case on plain error, our Supreme Court explained:

 For error to constitute plain error, a defendant must
 demonstrate that a fundamental error occurred at trial. To
 show that an error was fundamental, a defendant must
 establish prejudice—that, after examination of the entire
 record, the error had a probable impact on the jury’s
 finding that the defendant was guilty. Moreover, because
 plain error is to be applied cautiously and only in the
 exceptional case, the error will often be one that seriously
 affects the fairness, integrity or public reputation of
 judicial proceedings[.]

 Id., 365 N.C. at 518, 723 S.E.2d at 334 (internal quotations, citations, and alterations

 omitted). Put another way, if a defendant cannot show the alleged error prejudiced

 3 The standard of review also does not impact our decision because regardless, as

 explained below, Defendant cannot show prejudice.
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 him, he cannot meet the plain error standard. See id., 365 N.C. at 518–19, 723 S.E.2d

 at 334–35 (finding the defendant failed to meet his burden to show plain error when

 he could not show the jury probably would have reached a different verdict even when

 the erroneous nature of the jury instruction was “uncontested”); see also State v.

 Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (“The adoption of the ‘plain

 error’ rule does not mean that every failure to give a proper instruction mandates

 reversal regardless of the defendant’s failure to object at trial.”).

 B. Analysis

¶ 43 Defendant asserts plain error as to the trial court’s jury instructions on

 attempted first degree murder. First, Defendant argues the trial court plainly erred

 when it “did not provide any substantive instruction as to the second count of

 attempted first degree murder” but rather “merely told the jury that it had previously

 provided the instruction and they applied there as well.” Defendant does not explain

 how repeating the same instruction he alleges was erroneous would have helped the

 jury. Further, the trial court allowed the jury to take the written instructions to the

 jury room during deliberation, so if they needed to review the instructions again, they

 could have read them rather than hear them for a second time. Finally, Defendant

 cites no authority requiring repeating the same jury instruction twice when a

 defendant faces multiple counts. For those reasons, it is not clear the trial court

 erred, let alone plainly erred, with respect to not giving the attempted first degree
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 murder instructions again for the second count.

¶ 44 Defendant’s main argument centers on a dispute over the use of the general

 attempt and first degree murder pattern jury instructions, N.C.P.I. – Criminal 201.10

 (2011) (general attempt charge) and 206.10 (2019) (first degree murder), rather than

 the pattern jury instruction specifically on attempted first degree murder, N.C.P.I. –

 Criminal 206.17A (2003). Defendant at one point even argues the trial court used its

 “own instructions,” implying the pattern instructions were not used at all. The State

 asserts the trial court’s instructions “reveal adherence to the 2019 supplement” to the

 North Carolina pattern jury instructions on first degree murder, which was then

 combined with the general attempt charge.4 The conflict centers on pattern jury

 instructions because the Supreme Court has “encouraged” using them, although it is

 not required. State v. Haire, 205 N.C. App. 436, 441, 697 S.E.2d 396, 400 (2010)

 (citing State v. Morgan, 359 N.C. 131, 169, 604 S.E.2d 886, 909 (2004)).

¶ 45 For clarity, we briefly review how the jury instructions in this case relate to

 those pattern jury instructions. Except for the sentence discussed below, the State is

 correct that the trial court’s instructions follow the pattern jury instructions in

 N.C.P.I – Criminal 201.10 and 206.10 as those appeared at the time of Defendant’s

 4 Footnote 2 in the State’s brief cites to N.C.P.I – Criminal 206.17. This citation
 appears to be a clerical error given the State cited to 206.10, which is the correct cite, in the
 main text of its brief.
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 trial, with relevant additions on subjects such as alibi and acting in concert.

¶ 46 We further note that the instructions given conform in large part to the

 instruction which Defendant now claims was legally required, N.C.P.I. – Criminal

 206.17A (2003). Specifically, the jury instructions given at Defendant’s trial track

 the instructions in 206.17A in language—except as to the sentence discussed below—

 as to both elements of attempted murder and as to the definitions of malice,

 premeditation, and deliberation within the definition of first degree murder. The

 order of the instructions slightly differs—with the definition of first degree murder

 coming immediately after the first element (intent to commit first degree murder) in

 the instructions at trial rather than after both elements—and the definition of first

 degree murder at trial added instructions on the definitions of proximate cause and

 intent. The other difference between the instructions given based on 201.10 and

 206.10 versus Defendant’s preferred instruction on appeal, 206.17A, is the final

 mandate. The instructions at trial used language about whether Defendant

 “intended to commit first degree murder” rather than including language that

 Defendant “attempted to kill the victim” while acting “with malice, with

 premeditation and with deliberation,” a difference about which Defendant separately

 claims error.

¶ 47 The major difference in the instructions as given and the pattern jury

 instructions, both the trial court’s combination of 201.10 with 206.10 and Defendant’s
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 preferred 206.17A, is part of a sentence in the definition of malice. Both 206.10 and

 206.17A define “malice” in relevant part as “the condition of mind which prompts a

 person to [intentionally] take the life of another [intentionally] or to intentionally

 inflict serious bodily harm that[/which] proximately results in another person’s[/his]

 death without just cause, excuse[,] or justification.” N.C.P.I. – Criminal 206.10

 (2019), 206.17A (2003) (emphasis added) (alteration to reflect difference between

 206.10 and 206.17A with intentionally appearing in the first spot in 206.10 and in

 the second spot in 206.17A). By contrast, the jury instructions in relevant part

 defined malice as “that condition of mind which prompts a person to take the life of

 another intentionally or to intentionally inflict a wound with a deadly weapon upon

 another which proximately results in his death, without just cause, excuse or

 justification.” (Emphasis added.)

¶ 48 As Defendant indicates, a wound is not the same as serious bodily harm.

 Defendant relies on case law defining wound as “an injury to the person by which the

 skin is broken,” State v. Butts, 92 N.C. 784, 786 (1885), and serious bodily harm as

 “such physical injury as causes great pain or suffering.” See State v. Bonilla, 209 N.C.

 App. 576, 585, 706 S.E.2d 288, 295 (2011) (so defining while equating serious bodily

 harm and serious bodily injury). Further, as Defendant highlights, the statutory

 definition of serious bodily injury in the context of assault requires “substantial risk

 of death,” “serious permanent” harm, or harm that “results in prolonged
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 hospitalization.” N.C. Gen. Stat. § 14-32.4(a) (2019). These definitions from statute

 and case law align with the general legal definitions of the words. See generally

 Wounding and Serious Bodily Harm, Black’s Law Dictionary (11th ed. 2019).

¶ 49 While the language in that sentence differed, the trial court, in accordance with

 the pattern jury instructions, then instructed the jury it could infer malice if the State

 proved beyond a reasonable doubt that Defendant “intentionally inflicted a wound

 upon the deceased[/victim] with a deadly weapon” that proximately caused the

 victim’s death. N.C.P.I. – Criminal 206.10 (2019), 206.17A (2003) (alteration to

 demonstrate difference between the two versions of the pattern jury instructions). To

 the extent this unchallenged part of the pattern jury instructions is in accordance

 with the law—which we do not address—the difference in language above may not

 even be error. If intentionally inflicting a wound can lead to an inference of malice,

 then defining malice to include such an action may not be error.

¶ 50 Regardless, we need not reach a firm conclusion on whether the instruction

 was an error because assuming arguendo the trial court erred, it was not a plain

 error; Defendant cannot show prejudice. See State v. Mumma, 372 N.C. 226, 241, 827

 S.E.2d 288, 298 (2019) (stating the court “need not decide” whether an instruction

 was improper when the defendant could not show prejudice (internal quotations

 omitted)); see also State v. Turner, 237 N.C. App. 388, 392, 765 S.E.2d 77, 82 (2014)

 (assuming arguendo instructional error before finding no plain error due to lack of
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 prejudice). To find prejudice a court must conclude that “after examination of the

 entire record, the error had a probable impact on the jury’s finding that the defendant

 was guilty.” Lawrence, 365 N.C. at 518, 723 S.E.2d at 334 (internal quotations and

 citations omitted). Here, absent the alleged instructional errors as to the attempted

 first degree murder charges, Defendant cannot show the jury probably would have

 reached a different verdict.

¶ 51 First, the jury found the necessary elements as to the other charges for which

 Defendant does not challenge the jury instructions. Even under Defendant’s

 preferred instruction, N.C.P.I – Criminal 206.17A, malice includes “the condition of

 mind which prompts a person to take the life of another intentionally,” i.e. the intent

 to kill. The jury separately convicted Defendant of two counts of “assault with a

 deadly weapon with intent to kill inflicting serious injury.” (Capitalization altered;

 emphasis added.) This charge was based on the same action, shooting at Taylor and

 Brickhouse, as the attempted first degree murder charge, so the jury would have

 found intent to kill and thus malice even with Defendant’s requested jury instruction

 or any jury instruction that was not erroneous.

¶ 52 Faced with a similar situation in State v. Allen, this Court likewise found the

 defendant could not show prejudice and therefore did not carry his plain error burden.

 233 N.C. App. 507, 515, 756 S.E.2d 852, 860 (2014). In that case, the defendant

 claimed plain error in failing to instruct the jury on self-defense on the charge of
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 discharging a firearm into an occupied vehicle. Id., 233 N.C. App. at 514, 756 S.E.2d

 at 859. This Court rejected that argument, ruling it was “unlikely that the jury would

 have reached a different result” if the jury had been instructed on self-defense as to

 the discharging a firearm charge because the jury had also convicted defendant on

 attempted first-degree murder and assault even though the trial court gave a self-

 defense instruction on each of those charges. Id., 233 N.C. App. at 515, 756 S.E.2d at

 860. Here, if the jury had been properly instructed as to malice on the attempted first

 degree murder charge, the jury probably would not have reached a different result

 because the jury had also convicted Defendant on the assault charge, which, like

 malice, required finding intent to kill.

¶ 53 Looking to “the crux of the defense” at trial, we again find Defendant cannot

 demonstrate prejudice. See State v. Oliphant, 228 N.C. App. 692, 702, 747 S.E.2d

 117, 124 (2013) (finding no prejudice where defendants argued misidentification of

 both defendants at trial and then made plain error arguments on appeal claiming the

 jury instructions failed to make clear the guilt or innocence of one defendant was not

 dependent upon that of the other). Here, Defendant presented an alibi defense at

 trial. Yet, his plain error arguments focus on whether the jury was properly

 instructed on malice for the attempted first degree murder charge. The issues do not

 align because the jury still could have convicted Defendant even if they had received

 the malice instructions Defendant claims should have been given. At trial, Defendant
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 did not argue he lacked malice but rather that he was not involved at all. Put another

 way, in convicting Defendant of other charges tied to the shooting the jury rejected

 Defendant’s alibi defense, and even with different instructions on malice, they would

 have rejected the defense as to attempted first degree murder as well. Thus,

 Defendant again fails to carry his burden to show the alleged instructional “error had

 a probable impact on the jury's finding that the defendant was guilty.” Lawrence,

 365 N.C. at 518, 723 S.E.2d at 334 (internal quotations and citations omitted).

¶ 54 Defendant’s prejudice argument does not convince us otherwise. Defendant

 argues the allegedly erroneous instructions “had a probable impact on the jury’s

 verdict” because “[t]his is not a case where there was overwhelming evidence of guilt.”

 Overwhelming evidence of guilt can defeat a plain error claim on prejudice grounds.

 See id., 365 N.C. at 519, 723 S.E.2d at 335 (“In light of the overwhelming and

 uncontroverted evidence, defendant cannot show that, absent the error, the jury

 probably would have returned a different verdict.”). But the inverse, which

 Defendant argues, is not true. The “lack of overwhelming and uncontroverted

 evidence against defendant” does not require “the conclusion that a jury probably

 would have reached a different result.” State v. Maddux, 371 N.C. 558, 565, 819

 S.E.2d 367, 372 (2018). Thus, even though this case was close, we can still find no

 prejudice for the reasons laid out above.

¶ 55 Finally, we quickly note an issue with the State’s view of prejudice. The State
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 argued Defendant was satisfied with the jury instructions and thus “[u]nder these

 circumstances, even had the trial court erred, there should can [sic] be no conclusion

 that the error” resulted in prejudice. The State’s argument amounts to an attempt

 to create invited error by claiming if Defendant did not object to the instructions,

 there can be no prejudice ever and thus no plain error. We have already concluded

 plain error is the appropriate standard here. We will not undermine that standard

 by concluding there can be no prejudice whenever a defendant fails to object to jury

 instructions and thus must resort to plain error review on appeal. We find no plain

 error based upon the totality of the jury instructions and the facts of this particular

 case.

¶ 56 Because we conclude Defendant cannot demonstrate prejudice as to any of the

 alleged instructional errors, we find that the trial court did not plainly err when

 instructing the jury on attempted first degree murder.

 V. Clerical Error

¶ 57 Defendant finally argues the case should be remanded for correction of clerical

 errors. Specifically, Defendant contends attempted first degree murder is a class B2

 felony, but part of the amended judgment lists it as a class B1 felony. To the extent

 a clerical error exists, the State agrees that the case should be remanded to correct

 it.
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

¶ 58 “When, on appeal, a clerical error is discovered in the trial court’s judgment or

 order, it is appropriate to remand the case to the trial court for correction because of

 the importance that the record speak the truth.” State v. Smith, 188 N.C. App. 842,

 845, 656 S.E.2d 695, 696 (2008) (internal quotations and citations omitted). A clerical

 error is “an error resulting from a minor mistake or inadvertence, esp. in writing or

 copying something on the record, and not from judicial reasoning or determination.”

 Id. (internal quotations and citations omitted). The Supreme Court has previously

 recognized that erroneously assigning the wrong class of felony to a crime is a clerical

 error. State v. Hammond, 307 N.C. 662, 669, 300 S.E.2d 361, 365 (1983).

¶ 59 Here, Defendant correctly states attempted first degree murder is a class B2

 felony. See N.C. Gen. Stat. § 14-17 (stating first degree murder is a class A felony)

 and § 14-2.5 (stating an attempt to commit a class A felony is a class B2 felony).

 Defendant is also correct that the last page of the amended judgment, listing

 “Additional File No.(s) and Offense(s)” lists the attempted first degree murder

 conviction in 17CRS221515 as a class B1 felony. (Capitalization altered.) This error

 happened even though the trial judge in a signed order pursuant to a handwritten

 note indicated he was amending the original judgment to properly reflect attempted

 first degree murder as a class B2 felony. Further, the first page of the amended

 judgment lists the conviction in 17CRS221514 as a class B2 felony. These facts

 indicate the listing of attempted first degree murder as a class B1 felony in the
 STATE V. JONES

 2021-NCCOA-592

 Opinion of the Court

 amended judgment is a clerical error, not an error based on judicial reasoning or

 determination. Smith, 188 N.C. App. at 845, 656 S.E.2d at 696. Therefore, we

 remand to the trial court for correction of this error.

 VI. Conclusion

¶ 60 We find no error as to the substantive issues raised by Defendant. We conclude

 the trial court did not abuse its discretion in ruling the letter refreshed the witness’s

 testimony. Further, we find after de novo review that the letter itself was admissible.

 We also do not find plain error with regard to the jury instructions on attempted first

 degree murder.

¶ 61 However, we find the amended judgment contains a clerical error incorrectly

 listing the attempted first degree murder conviction in 17CRS221515 as a class B1

 felony. We remand to the trial court for correction of this error. On remand, the trial

 court shall amend the judgment to correctly reflect that attempted first degree

 murder is a class B2 felony.

 NO ERROR AND REMANDED.

 Judges DIETZ and CARPENTER concur.